UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SERENITY WADLEY, BY AND THROUGH
HER GUARDIAN, KENYETTE WADLEY,

Plaintiff,

v.

HAZEL PARK COMMUNITY SCHOOLS, ET
AL.,

Defendants.

_____/

Case No. 18-cv-12063

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [#28]**

**I. INTRODUCTION**

Presently before the Court is the Defendants' Motion for Summary Judgment.

On October 24, 2017, Plaintiff Serenity Wadley had a behavioral incident, walked

out of her classroom, and was brought into a separate room at Webb Elementary

School by two employees. As Plaintiff attempted to escape this room through a

nearby door, one of the employees moved to shut that door. Plaintiff's hand was

still around the door as it closed, resulting in significant injury to one of her fingers.

On August 21, 2018, Serenity Wadley, by and through her mother, Kenyette

Wadley, filed an Amended Complaint pursuant to 42 U.S.C. § 1983. Plaintiff alleges

violations of her Fourth and Fourteenth Amendment rights as well as state law

claims of assault, battery, and gross negligence against Defendants Lynette Daley, Corri Nastasi, and the Hazel Park School District.

Defendants filed their Motion for Summary Judgment on July 31, 2019. In their present motion, Defendants argue that Plaintiff's claims are barred because she must first exhaust administrative remedies under the Individuals with Disabilities Education Act (IDEA). They further assert that there are no genuine issues of material fact as to whether Defendants violated Plaintiff's constitutional rights or committed assault, battery, or gross negligence. Additionally, Defendants argue that, even if a constitutional violation occurred, all Defendants are entitled to immunity.

Plaintiff filed her response to Defendants' motion on September 20, 2019, and Defendants filed their reply on September 30, 2019. A hearing on this matter was held on December 2, 2019. For the reasons discussed below, the Court will GRANT Defendants' Motion for Summary Judgment [#28].

## II. FACTUAL BACKGROUND

This case stems from a behavioral incident that occurred during the school day on October 24, 2017. Plaintiff Serenity Wadley, then a third-grade, eight-year-old student at Webb Elementary School, returned to her classroom after lunchtime. ECF No. 11, PageID.68. The classroom teacher asked Plaintiff to remove an object

from her mouth, but Plaintiff did not do so and instead left the classroom by herself. *Id.*; ECF No. 28, PageID.170. Unable to leave the classroom to retrieve her, the teacher requested help from school employees Joan Rybinski, a paraprofessional, and Defendant Lynette Daley, a behavioral specialist. *Id.*

Plaintiff ran through the school hallways in an attempt to avoid Rybinski and Defendant Daley. ECF No. 11, PageID.69. Defendants state that, as Plaintiff ran around trying to avoid contact with the paraprofessionals, other classroom transitions were occurring in the school hallways. ECF No. 28, PageID.171. This included the movement of students in the "SXI classroom," which has "students with severe multiple impairments that [make them] medically fragile." *Id.* at PageID.172. Defendants explained that they were fearful Plaintiff would injure either herself or others if she continued running through the hallways. *Id.*

Plaintiff was then brought by Rybinski and Daley into a separate room off of the hallway. *Id.* This room is known as the "wolf den" as a reference to the school's mascot and, according to Defendants, used by school officials as a de-escalation space when students have behavioral problems. ECF No. 36-7, PageID.576; ECF No. 28-13, PageID.372. In contrast, Plaintiff alleges that the wolf den is an isolation room where behaviorally challenged students are placed in "solitary confinement . . . for prolonged periods of time . . . without any adult supervision." ECF No. 11,

PageID.68.  The wolf den contains various chairs and bookshelves along with two

doors that lead back to the hallway.  ECF No. 28-13, PageID.371.

Plaintiff was in the wolf den with Rybinski and Defendant Daley, who each

stood in front of the two doors.  *Id*. at PageID.374.  Plaintiff states that she knocked

books down from a bookshelf, while Defendant asserts that Plaintiff attempted to

pull over the entire bookcase.  ECF No. 11, PageID.68; ECF No. 28, PageID.173.

Defendant Daley moved from her position in front of the door to either pick up the

books or prevent the bookshelf from falling over.  *Id*.  As she moved away from her

position, Plaintiff ran towards that door in an attempt to leave the wolf den.  *Id*.

Defendant Daley moved to close the door in response, but Plaintiff's hand was

positioned in between the doorframe.  *Id*.  Plaintiff's finger was caught in the door

as it closed, resulting in a severe fracture and laceration of her left index finger.  ECF

No. 11, PageID.69.  Plaintiff was taken to the hospital, where they set the bone and

stitched the laceration.  ECF No. 36-2, PageID.530.

Defendant Nastasi, the principal of Webb Elementary School, was informed

of the incident later that day.  ECF No. 28-14, PageID.396.  She stated that the

actions described to her by Rybinski and Defendant Daley appeared to be in line

with all school policies and trainings.  *Id*. at PageID.397.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

Counts I, II and V of Plaintiff's complaint allege deprivation of constitutional rights in violation of 42 U.S.C. § 1983. ECF No. 11, PageID.72-73, 75. Counts III and IV contain state law claims of assault, battery, and gross negligence. *Id.* at PageID.74-75. Defendants first argue that Plaintiff has failed to exhaust her administrative remedies under the Individuals with Disabilities Education Act. They also argue that the individual Defendants are entitled to immunity under the

applicable federal and state laws, barring Plaintiff from succeeding on any of those claims.

### A. Exhaustion under the Individuals with Disabilities Education Act

Defendants first argue that Plaintiff must exhaust her administrative remedies under the Individuals with Disabilities Education Act (IDEA) before she can bring a civil claim in this Court. Plaintiff states that her claim does not fall within the purview of the IDEA and even if it did, exhaustion would be futile and therefore unnecessary under these circumstances.

The IDEA was enacted to ensure that a school provides a "free appropriate public education" (FAPE) to all children with disabilities. 20 U.S.C. § 1415. Even if a plaintiff does not explicitly state a claim under the IDEA, the statue will still apply "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE . . . ." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 747 (2017).

If an education-related dispute arises, the IDEA establishes formal administrative procedures that allow "any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). A plaintiff must generally exhaust her claims under the IDEA through state administrative procedures before filing a civil action. *Id*. at § 1415(l).

However, there are narrow exceptions to the exhaustion requirement, including "when the use of administrative procedures would be futile or inadequate to protect the plaintiff's rights . . . ." *F.C. v. Tennessee Dep't of Educ.*, 745 F. App'x 605, 608 (6th Cir. 2018). Further, a complaint that seeks redress for "other harms, independent of any FAPE denial, is not subject to §1415(l)'s exhaustion rule," and may be properly brought before a court without application of the IDEA. *Fry*, 137 S. Ct. at 754-755.

Here, Defendants argue that "the gravamen of Plaintiff's Complaint is that she was improperly restrained when she was displaying difficult behaviors." ECF No. 28, PageID.189. Defendants cite various cases holding that the use of restraints and seclusion against disabled students concerns the denial of FAPE and therefore falls within the purview of the IDEA. *See, e.g.*, *N.S. by & through J.S. v. Tennessee Dep't of Educ.*, No. 3:16-CV-0610, 2017 WL 1347753, at *11 (M.D. Tenn. Apr. 12, 2017). Plaintiff disagrees with Defendants' portrayal of her complaint, arguing instead that "Plaintiff's claims have nothing to do with FAPE, but rather deal with a school actor's decision to physically injure a child." ECF No. 36, PageID.487. Plaintiff further asserts that, even if the IDEA applied to her complaint, exhaustion would be futile as "the condition creating Serenity's damage has ceased" and equitable relief through the IDEA procedures will provide inadequate compensation. *Id.*

The difference between the parties' arguments is the characterization of Plaintiff's complaint and relief sought. Whether this case falls under the IDEA depends on whether the claims relate to (1) Plaintiff's allegation of numerous seclusions in the wolf den, or (2) the one-time injury to Plaintiff's finger. In the cases cited by Defendants, the majority of the student plaintiffs were subjected to continuous restraint or seclusion use. Here, however, Plaintiff is seeking relief for a singular event in four out of her five claims, and she has conceded that the remaining claim about continuous restraints (Count I) is without merit. IDEA exhaustion would not properly redress Plaintiff's injury because Plaintiff does not argue that the door-slamming was used as an educational tool for her as a disabled student. The IDEA administrative process is therefore not appropriate here, as the denial of a FAPE is not at issue.

Further, it is unclear whether Plaintiff's school, Webb Elementary, was aware of Plaintiff's diagnoses prior to the day of the incident. The Supreme Court found that, "[u]nder the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE." *Fry*, 137 S. Ct. at 749. A student's IEP is typically the centerpiece of litigation involving the IDEA, as it contains documentation about the student's diagnoses, behavioral problems, and proposed interventions, among other aspects. In this case, Plaintiff did not receive an IEP until four months *after* the incident at

issue. Defendants' oral argument on this matter did not sufficiently establish that the school was aware of Plaintiff's disability status at the time of the incident. For IDEA purposes, there is a crucial distinction between a student with behavioral issues and a student with documented disabilities, and Defendants did not show that they were treating Plaintiff as a disabled student in October 2017. Accordingly, Plaintiff is not required to first exhaust her claims under the IDEA, and the Court may properly address Defendants' remaining summary judgment arguments.

## B. Federal Claims

Plaintiff alleges three federal constitutional claims under Section 1983 against the individual and municipal Defendants. Each count is addressed below.

### 1. Fourth Amendment Unlawful Seizure (Count I)

Plaintiff brings an unlawful seizure claim under the Fourth Amendment against Defendants Daley and Nastasi, alleging that Serenity suffered when she was placed in the wolf den and "unable to free herself from this captivity." ECF No. 11, PageID.73. Defendants argue that because this occurred in a school environment, Sixth Circuit precedent instructs the Court to use the "shocks the conscious" Fourteenth Amendment substantive due process standard. Plaintiff asserts that her Fourth Amendment claim is distinct from her Fourteenth Amendment claim and should be analyzed under the traditional unlawful seizure standard.

In the instant matter, Plaintiff's unlawful seizure claim is related but distinct from her excessive force claim. The original complaint and response specifically allege that Plaintiff was "lock[ed]" in a "windowless room" "by herself" for "hours at a time," "essentially subject[ing] Serenity to tactics used by police when interrogating hardened criminals." ECF No. 36, PageID.490. None of the evidence in the record, however, supports these allegations. Instead, the principal's deposition testimony indicates that Plaintiff was accompanied to the wolf den by school staff during behavioral incidents, consistent with school policy. *See* ECF No. 36-5, PageID.553 ("Yes, students, often times, go there to talk with a  behavior para-pro or myself, or our social worker to try to, depending on the situation, regain composure, get perspective on a situation, de-escalate, calm down, be part of an investigation into a behavior incident."). Plaintiff has not demonstrated that she was ever locked in the room alone, let alone for prolonged periods of time, and Daley noted in her deposition testimony that the wolf den has "two large windows." ECF No. 28-13, PageID.371. The hearing on this matter further established that no factual support exists for Plaintiff's allegations in this Count, and Plaintiff conceded as much during oral argument. Plaintiff therefore has not carried her burden to demonstrate a genuine factual dispute as to a violation of her Fourth Amendment rights.

## 2. Fourteenth Amendment Deprivation of Due Process (Count II)

Plaintiff next asserts a Fourteenth Amendment claim against Defendant Daley, claiming that she maliciously closed the door on Plaintiff's hand and violated her right to bodily integrity and freedom from excessive force. The Sixth Circuit analyzes this claim under a "shocks the conscious" standard, which asks if there was a pedagogical justification for the use of force, if force was used to meet a legitimate objective, if it was applied in a good faith effort or "maliciously and sadistically for the very purpose of causing harm," and whether a serious injury occurred. *Domingo v. Kowalski*, 810 F.3d 403, 411 (6th Cir. 2016).

The *Domingo* factors tip decidedly in favor of Defendants. While Plaintiff did suffer serious injury to her finger, Plaintiff has not provided any evidence to suggest that Defendant Daley intentionally, maliciously, or sadistically caused Plaintiff's injury. The facts of this case suggest instead that an unfortunate accident took place, not that Defendant used force intentionally or as punishment. Defendants' deposition testimony indicated that there was concern about the safety of both Plaintiff and the medically fragile students in the hallway that day, which suggests why Daley moved to close the door quickly. Given the claims raised, Plaintiff's bare assertion that Defendant saw her hand in the door and made a conscious decision to slam it out of anger, without any other evidence, is not sufficient to withstand the summary judgment stage.

### 3. Qualified Immunity as to Counts I & II

The individual Defendants maintain that they are entitled to qualified immunity on Plaintiff's Fourth and Fourteenth Amendment claims.

To establish qualified immunity, courts ask "whether the facts alleged or shown make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the incident." *Sumpter v. Wayne Cty.*, 868 F.3d 473, 480 (6th Cir. 2017). The district court may address the qualified immunity analysis in any order. *Kent v. Oakland Cty.*, 810 F.3d 384, 390 (6th Cir. 2016).

To be clearly established, "the case law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Clemente v. Vaslo*, 679 F.3d 482, 490 (6th Cir. 2012) (quoting *Saylor v. Bd. of Educ. of Harlan Cty.*, 118 F.3d 507, 515 (6th Cir. 1997)). However, "some violations of constitutional rights are so obvious that a materially similar case would be unnecessary." *Id.* at 651 (quoting *Binay v. Bettendorf*, 601 F.3d 640, 646–47 (6th Cir. 2010)). The plaintiff bears the ultimate burden of proof, and if the plaintiff fails to carry her burden as to either element of the qualified immunity analysis, then the official is immune from suit. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

Here, this Court has found that the record does not establish any constitutional violations. Thus, Plaintiff cannot defeat the individual Defendants' qualified immunity defense. Defendants Nastasi and Daley are therefore entitled to qualified immunity for Plaintiff's Section 1983 claims under the Fourth and Fourteenth Amendment.

### 4. *Monell* **Municipal Liability (Count V)**

Plaintiff's sole claim against Hazel Park School District is a *Monell* municipal liability claim. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). To prevail in a Section 1983 claim against a municipality, one must demonstrate: (1) the deprivation of a constitutional right; and (2) that the defendant (municipality) is liable for the violation. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As this Court analyzed above, the Court has not found a deprivation of Plaintiff's constitutional rights. Plaintiff's Section 1983 claim therefore fails under the first element.

Even if there was a constitutional deprivation, Plaintiff still needs to prove the municipality is liable. To do this, Plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694 (1978)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its

employees or agents.'" *Id.* (quoting *Monell*, 436 U.S. at 694). Plaintiff must show

one of the following to prove this claim:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision making authority ratified illegal actions;
> (3) *the existence of a policy of inadequate training or supervision*; or
> (4) *the existence of a custom of tolerance or acquiescence of federal rights violations.*

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)).

Here, Plaintiff asserts that the Hazel Park School District engaged in the

"practice of isolating young children with learning or mental disabilities by placing

them alone, without adult supervision, in windowless, closet-like rooms for

prolonged periods of time." ECF No. 11, PageID.76. While Plaintiff's allegations

are serious, there is no evidence in the record to support these claims. To the

contrary, the deposition testimony from Plaintiff's mother indicates that she has no

knowledge of "any other children being isolated in any sort of room" at the school.

ECF No. 28-2, PageID.234. Further, Daley testified in her deposition that the wolf

den has "two large windows" that look to the inside hallways, which lead to exterior

doors. ECF No. 28-13, PageID.371.

Plaintiff has not demonstrated that there is a genuine dispute of material fact

as to whether she or other students were restrained and alone in windowless rooms

within the school. Plaintiff fails to provide evidence that supports her original claim

of unconstitutional practices by the school district, and the evidentiary record produced here does not support that conclusion either. Additionally, this Court has already reasoned that Plaintiff cannot establish a constitutional deprivation under either the Fourth or Fourteenth Amendments. Accordingly, this *Monell* claim against the school district must fail.

### C. State Law Claims

Plaintiff also alleges state law tort claims of assault, battery, and gross negligence against the individual Defendants.

Under Michigan law, an assault "is defined as any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Estate of Hill by Hill v. Miracle*, 853 F.3d 306, 316–17 (6th Cir. 2017) (citing *Espinoza v. Thomas*, 189 Mich. App. 110, 119 (1991)). Moreover, a battery is "the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id.* Further, a governmental employee may be liable for gross negligence in Michigan if he or she engages in "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. Laws § 691.1407(8)(a).

The Court is not persuaded that Defendant Daley acted in an intentional or malicious manner during the incident in question. Nor does her conduct indicate that she consciously or willfully disregarded the risk that Plaintiff's finger was in the door; in fact, the evidence suggests she had no knowledge of any part of Plaintiff's body in the doorway. In contrast, the *Bellinger* case that Plaintiff cites found that the defendant "took active steps to remove and discourage use" of a table saw's safety guards and then "pressured plaintiff to use the saw in this unsafe condition." *Bellinger by Bellinger v. Kram*, 319 Mich. App. 653, 660 (2017). Here, Plaintiff has not shown any "active steps" by Defendants that rise to the level in *Bellinger* or demonstrate a lack of concern for injury. Without any evidence of Defendants' intentionality here, Plaintiff has not met her burden to withstand summary judgment. Further, because Plaintiff cannot show intentionality, she cannot defeat Defendants' governmental and school board immunity assertions. *See Odom v. Wayne Cty.*, 482 Mich. 459 (2008); Mich. Comp. Laws § 380.1312. The Court must therefore grant summary judgment in favor of Defendants on the state law claims as well.

## V. CONCLUSION

For the reasons discussed herein, the Court will GRANT the Defendants' Motion for Summary Judgment [#28] and dismiss the case.

**IT IS SO ORDERED.**

Dated:        December 6, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 6, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager
